HOANG, Appellee,

v.

E*TRADE GROUP, INC., Appellant.

[Cite as *Hoang v. E*TRADE Group, Inc.* (2000), 137 Ohio App.3d 126.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 76992.

Decided March 27, 2000.

*Webster, Roosa & Webster, L.L.P., David B. Webster* and *Beth Brandon Webster,* for appellee.

*Kelley, McCann & Livingstone, L.L.P.,* and *Mark J. Valponi; Brobeck, Phleger & Harrison, L.L.P., Gregory A. Markel* and *Francis S. Chlapowski,* for appellant.

O'DONNELL, Presiding Judge.

E*TRADE Group, Inc., a California company and provider of online investing services, appeals from a judgment of the common pleas court denying its motion to compel arbitration in connection with a putative class action suit filed by one of its Ohio subscribers, Truc Hoang. E*TRADE claims on appeal that its contract to provide services requires arbitration of customer disputes and, therefore, it urges us to reverse the trial court's judgment. Upon review, we believe that the trial court prematurely considered the arbitration issue, and we vacate its order and remand this matter to the court with instructions.

The record reveals that on November 25, 1998, Hoang opened an E*TRADE account by printing an application from the E*TRADE website, signing it, and mailing it to E*TRADE. That application contained the following language, in boldface type, concerning the arbitration of disputes:

"**31.a. Arbitration Disclosures. The following is a required disclosure for all brokerage agreements containing a pre-dispute arbitration provision:**

"**(1) Arbitration is final and binding on the parties.**

"**(2) The parties are waiving their right to seek remedies in court, including the right to jury trial.**

" * * *

"**b. Arbitration Agreement. You agree to arbitrate any controversy between you and E*TRADE or any of its officers, directors, employees, agents or affiliates arising out of or relating in any way to your Account, including but not limited to: (i) transactions of any kind made on your behalf by, through or with E*TRADE, its officers, directors, employees, agents and/or affiliates; or (ii) the performance, construction or breach of this Agreement or any other written agreement between you and E*TRADE. Such arbitration shall be conducted in accordance with the rules then in effect of the National Association of Securities Dealers, Inc. You understand that the**

judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

"c. Class Actions. No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until:

"(1) the class certification has been denied;

"(2) the class is decertified;

"(3) the customer is excluded from the class by the Court."

After she opened her account, Hoang experienced difficulty in executing timely transactions, which she attributed to E*TRADE system failures and, as a result, she filed a class action lawsuit against E*TRADE to recover her losses. In her complaint for class action certification, breach of contract, and other relief, Hoang asserts that on February 2, 1999, after E*TRADE had upgraded its software programming, she placed an order for three hundred shares of National Discount Brokers Group, Inc., at a listed market price of $36.25 per share. However, she did not receive confirmation within the usual and customary time, and even though she attempted to cancel her order, E*TRADE filled it at $38.125 per share. Hoang further asserts that on February 4, 1999, she placed orders for seven hundred shares of J.B. Oxford Holdings, Inc., at a listed market price of $19.25 per share, and for five hundred shares of Siebert Financial Corporation, at a listed market price of $57 per share. When Hoang did not receive timely confirmation of these orders, she asserts that she attempted to cancel them, but could not do so, and E*TRADE filled them at $24 for J.B. Oxford and $69 for Siebert. Hoang claims losses of $10,000 due to the inflated purchase price of securities and a total loss of $40,000 following her liquidation of them.

In response to her complaint, E*TRADE sought arbitration pursuant to its contract with her, relying on the fact that a class action suit had been filed earlier in the California Superior Court styled *Larry Cooper et al. v. E*TRADE Group, Inc.*, case No. CV770328, and the superior court there had denied class certification. E*TRADE further relied on the fact that the allegations raised in the *Cooper* complaint paralleled those raised by Hoang and, therefore, it urged that Hoang could not litigate her claim in court since she had been a member of the putative *Cooper* class and that the California court had denied class certification.

In the instant case, the trial court considered E*TRADE's argument, but denied its motion to compel arbitration. E*TRADE now appeals and raises one assignment of error for our review:

"The trial court erred in denying defendant–appellant's motion to compel arbitration and stay this action."

E*TRADE urges that the court erred in denying its motion to compel arbitration because Hoang had signed the customer agreement, which contained a mandatory arbitration clause and the California Superior Court had denied class certification in the *Cooper* litigation, thereby precluding Hoang from prosecuting her cause of action in court. Hoang contends that because she filed her own class action, the contract provisions requiring arbitration do not apply to her, and she maintains that the trial court properly denied E*TRADE's motion seeking arbitration.

On this appeal, then, we are confronted with the issue of the propriety of the trial court's order denying arbitration of the claims asserted by Hoang.

Upon review of the contractual arbitration provisions, we recognize that it contains the following language in paragraph 31.c.:

"No person shall * * * seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action * * * until:

"(1) the class certification has been denied;

"(2) the class is decertified;

"(3) the customer is excluded from the class by the Court."

Our review of the propriety of the trial court's decision in this case is dependent upon whether the trial court will grant or deny class certification in Hoang's lawsuit. Hoang here has initiated a putative class action lawsuit, and the provisions of the contract state that E*TRADE may not seek to enforce any pre-dispute arbitration agreement until the court: (1) denies class certification, (2) decertifies the class, or (3) excludes Hoang from the class. Thus, if the court grants class certification in this case, then its decision to deny arbitration is correct; however, if the trial court denies that certification, its decision to deny arbitration is erroneous. Hence, the trial court has prematurely denied the arbitration issue without first considering and determining whether it will grant or deny class certification.

Accordingly, we conclude that the trial court's decision to deny E*TRADE's motion to compel arbitration is premature, and we vacate that order and remand this cause to the court with instructions to initially consider and to determine the issue of class certification. Thereafter, the trial court can proceed to reconsider the motion to compel arbitration.

*Judgment accordingly.*

TIMOTHY E. MCMONAGLE and ROCCO, JJ., concur.